## H. T. CORNELIUS v. THE STATE.

### No. 3762. Decided June 10, 1908.

**1.—Manslaughter—Evidence—Bill of Exceptions.**

Where upon trial for manslaughter the State introduced an expert physician to show the range of the gun-shot wound in deceased's body; there was no error; and the objection that the physician was not an expert, the bill of exceptions not being verified, could not be considered on appeal.

**2.—Same—Evidence—Stenographer's Notes.**

Upon trial for manslaughter there was no error to admit in evidence the transcribed stenographer's notes of the official court stenographer, containing defendant's testimony given at a former trial; the same being duly verified by the stenographer. Following Casey v. State, 50 Texas Crim. Rep., 392.

### 3.—Same—Evidence—Character of Deceased.

Upon trial for manslaughter, where defendant had offered testimony of numerous threats made by the deceased against the life of defendant, some of which had been communicated to the defendant, there was no error to permit the State to show that the deceased was an inoffensive quiet man and peaceable citizen. Following Arnwine v. State, 50 Texas Crim. Rep., 477.

### 4.—Same—Evidence—Bill of Exceptions.

Where upon trial for manslaughter, the reasons for objecting to testimony were not stated and the testimony was not embodied in the bill of exceptions, the same could not be considered on appeal.

### 5.—Same—Charge of Court—Manslaughter—Former Jeopardy—Acquittal of Higher Degree of Homicide—Constitutional Law.

Upon trial for manslaughter where the defendant had on a previous trial been acquitted of the two degrees of murder, there was no consitutional or statutory inhibition in using what is ordinarily denominated murder evidence under the original indictment for murder to convict him of manslaughter; it being the homicide, that is the killing which constitutes the offense and not the different degrees of homicide. The degrees of homicide are not distinct offenses within the contemplation of the Constitution, Sections 10 and 14, Bill of Rights of this State, but are merely grades of one common offense, to wit homicide, and there was no error to refuse a requested charge to acquit the defendant for the reason that the testimony did not support a charge on manslaughter against him. Davidson, Presiding Judge, dissenting.

### 6.—Same—Charge of Court—Self-Defense.

Where upon trial for manslaughter the court's general charge on self-defense based upon real and apparent danger was sufficient, there was no error in the court's refusal of special requested charges on this phase of the case.

### 7.—Same—Charge of Court—Retreat.

Where upon trial for murder the evidence did not suggest the law of retreat, there was no error in failing to charge thereon.

### 8.—Same—Charge of Court—Harmless Error—Manslaughter.

Where the defendant was convicted of manslaughter there was no error in the court's refusal of a special requested charge upon that phase of the case; the same having been submitted in the general charge, and such refusal was harmless error.

### 9.—Same—Provoking Difficulty—Charge of Court.

Where upon trial for manslaughter the court instructed upon that phase of the case, upon self-defense, and also upon provoking the difficulty, but failed to charge the jury of what offense defendant would be guilty if he provoked the difficulty with intent to commit a breach of the peace, this could not injure defendant, since he was only being tried for manslaughter, and the error, if any, was harmless, the verdict being for manslaughter.

### 10.—Same—Provoking Difficulty—Charge of Court.

Where upon trial for manslaughter the defendant himself admitted that he used the language in question expecting that it would provoke a difficulty; that he had his pistol in his pocket and his hand on his pistol expecting to use the same if the deceased did resent the insult offered, the evidence sufficiently raised that issue, and a charge thereon was proper. Davidson, Presiding Judge, dissenting.

### 11.—Same—Charge of Court—Self-Defense.

Where upon trial for manslaughter the defendant could not have been injured in the face of the testimony by a charge on self-defense which contained the phrase that the jury could consider the relative strength of the parties and defendant's knowledge of the character and disposition of the deceased, and

the charge in other respects was a correct presentation of the law of self-defense, there was no error. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Donley. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Jno. J. Hiner, A. T. Cole, Veale & Crudgington,* for appellant.— On question of admitting notes of official stenographer: Stringfellow v. State, 42 Texas Crim. App., 588; 2 Texas Ct. Rep., 234. On question of former jeopardy: Parker v. State, 22 Texas Crim. App., 105; Fuller v. State, 30 Texas Crim. App., 559; Conde v. State, 35 Texas Crim. Rep., 98.

*F. J. McCord,* Assistant Attorney-General, *H. S. Bishop,* District Attorney, *C. B. Reeder* and *H. H. Cooper,* for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at five years confinement in the penitentiary.

1. Bill of exceptions No. 3 complains that the State was permitted to prove by Dr. G. T. Vinyard the following: "Q. From the examination you made there what is your best judgment as to the entrance and range of that bullet? Appellant's counsel: We object to that. Let him state the facts and let the jury draw their conclusions. The court: Did he state he passed the probe clear through the entrance to the exit? A. No, sir. I passed it up from the entrance wound; after it got up so far it could have been passed any other way on account of the lung tissue. Q. What was the direction of the track of the bullet? What I want to get at is, what was the range of that bullet from the place where you begun to probe from the entrance wound, with reference to the exit?" Appellant objected on the ground that it was a conclusion. The court: "That is a matter for the jury to pass upon and I will admit the testimony." "A. The range of the bullet from where I begun to probe from the entrance wound was upward and to the right, and was in the direction of the exit wound," to which said last question and answer the defendant objected for the reason, first, that it was but the opinion of the witness on a matter not the subject of expert testimony; second, the witness had shown by his first answer to said question that the direction from whence said bullet came was speculative and uncertain, and had for its object the relative position of the parties; he could only state actual conditions and not leave the impression from the manner and verbiage of his answer as to what

his opinion was, as to the relative position of the parties." We see no objection to this testimony. The witness appears to have been a physician. The court does not certify that he was not an expert on gun-shot wounds, and hence the bill to that extent is defective. While it is true, appellant objects to same on the ground that he is not an expert, yet an objection is not a statement of a fact. Furthermore, the testimony under no view point, as we understand it, could be hurtful in this case.

2. Bill of exceptions No. 4 shows that the State placed A. M. Works, Jr., the official stenographer of said court, upon the stand, and after proving by him that he had reported the two former trials of this cause in the District Court of Potter County, and after proving by said witness that he had transcribed the notes of the defendant's testimony given at the first of said trials, and after testifying that such transcription was a correct statement of the testimony of said witness Cornelius, thereupon the witness was permitted to state various things that the defendant testified on a former trial, to all of which appellant objected on the ground that it was not shown that the paper from which the witness was reading had ever been signed by the defendant as a signed statement; that no testimony whatever was offered to show that the defendant had admitted to any person that such question and answer had been asked him and answered by him as stated in said document; and that it was not shown that he had at any time admitted the correctness of said question or answer. The bill is approved with this explanation: "This witness testified on his voir dire examination that he was a competent and experienced stenographer; that he had been the official court reporter for this judicial district for the last two years and was still occupying said position; that he was present and acting as official stenographer and reporter for the district at a former trial of this cause in Amarillo, and heard the defendant testify in his own behalf at said trial; that witness took stenographic notes of the testimony of defendant at said trial, and that he knew he had taken the testimony correctly; that he transcribed his notes of said defendant's testimony correctly and knew that it was a correct statement of defendant's evidence, but as to some of the testimony shown in the bill he had no independent recollection of it." There was no error in admitting the stenographer's notes to be introduced as above pointed out. This question has been decided by this court adversely to appellant's contention. See Casey v. State, 50 Texas Cr. Rep., 392; 17 Texas Ct. Rep., 169, and Stringfellow v. State, 42 Texas Crim. Rep., 588.

3. Bill of exceptions No. 5 shows that while the witness Mrs. George Highfill, wife of deceased, Frank Harrington and R. D. Wilson, were on the stand, in behalf of the State, the court, over appellant's objection, permitted each of said witnesses to testify that the deceased was an inoffensive quiet man and peaceable citizen, of a kind and

inoffensive disposition, to which testimony, on the part of each of said witnesses, the defendant in open court objected for the reason that said testimony was offered for the purpose of proving the character and general reputation of deceased as being a violent, dangerous man, or a man of quiet disposition, when such issue had not at that time nor any other time during the progress of the trial been raised by the defendant, and deceased's character had not been attacked. The court overruled the objection for the reason that he permitted it to go before the jury on the issue of threats alleged to have been made by deceased against the life of defendant as raised by the testimony offered by the defendant. This bill is approved with this explanation: "The defendant had offered testimony of numerous threats made by deceased against the life of defendant, some of which are shown to have been communicated to defendant and some were not. After the defendant had rested his case the State offered the testimony of the above three witnesses in rebuttal, and this evidence was admitted under authority given in article 713 of the Penal Code, and was directly in rebuttal to said evidence of previous threats of deceased." Said article justified the court in the ruling complained of. Arnwine v. State, 50 Texas Cr. Rep., 477; 96 S. W. Rep., 4.

4. Bill of exceptions No. 6 shows the following: After the State had introduced the witness Burwell and he had testified, appellant presented the court the following motion: "Now comes the defendant, by his attorneys, and moves the court to exclude from the consideration of the jury the testimony of the witness W. M. Burwell concerning the statements made by defendant to Highfill on the morning of the killing and immediately preceding the killing, for the following reasons, to wit. First. The defendant in this case is on trial for manslaughter only, he having been acquitted of murder, and said testimony does not raise, or tend to raise, or support the charge or issue of manslaughter. Second. Because said testimony raises, and tends to raise, only the issue of murder of the first or second degree only, and not manslaughter, the charge upon which defendant is now upon trial, and same tends to and does prejudice the rights of the defendant before the jury and does not support or tend to support its charge for which he is now upon trial, but does tend to show that if guilty at all, he would be guilty of murder, an offense of which he has already been acquitted by the jury in a former trial of this cause." This bill is wholly defective. It does not state what the witness Burwell testified to. Under the rules of this court we are not permitted to look at a statement of facts unless the bill refers to the statement of facts to complete or make perfect a bill of exceptions. Reasons for objecting to testimony is not stating that said testimony is subject to objections made. In other words, in order for this bill to be complete it will be necessary either for

the testimony complained of from the witness Burwell to be embodied in the bill, or for the bill to refer to the testimony of Burwell in the record before us. Neither was done. Therefore, in the shape this bill is presented, there is no error authorizing this court to review said testimony.

5. Bill of exceptions No. 7 complains that the court erred in not excluding the testimony of H. A. McDonald for the same reason urged in the testimony of the witness Burwell, but the bill is defective in the same particular complained of in bill No. 6, in that it does not state what the testimony of the witness McDonald was. Bill of exceptions No. 8 is in the same condition and complains of the failure of the court to exclude the testimony of A. M. Works.

The questions attempted to be covered by appellant's bill of exception, which we hold is defective, is, however, properly raised by bill of exceptions No. 12. This bill complains that the court erred in failing to give the following charge to the jury: "The defendant requests the court to charge the jury to return a verdict for the defendant, and acquit him, for the reason that the testimony does not raise nor tend to raise, does not support nor tend to support the charge of manslaughter against him, he being on trial herein for that offense." Appellant in this case had on a previous trial been acquitted of the two degrees of murder, and upon this trial was convicted of manslaughter, and his insistence, as stated in the bill, is that the evidence showing nothing but murder in the first or second degree, that he is entitled to an acquittal, and cites us to the case of Parker v. State, 22 Texas Crim. App., 105, and Fuller v. State, 30 Texas Crim. App., 559. This question has also been before this court in the case of Turner v. State, 41 Texas Crim. Rep., 329; 54 S. W. Rep., 579, and Pickett v. State, 43 Texas Crim. Rep., 1; 2 Texas Ct. Rep., 722. Also in other cases. In view of the confusion growing out of the rendition of said opinions we deem it necessary to review the question presented in the light of the Constitution and laws of this State. Section 10 of the Bill of Rights provides that a defendant in all felony cases shall have an indictment preferred against him by a grand jury, which indictment must show the nature and cause of the accusation against him, and he is entitled to a copy thereof, Section 14 of the Bill of Rights provides that "no person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction." Judge Hurt, in the case of Hirshfield v. State, 11 Texas Crim. App., 207, in passing upon the words "same offense" in the last cited article of the Constitution, uses this language: "Under the Constitution no person shall be twice put in jeopardy for the same offense. What is meant by the term 'same offense?' Does it mean the same offense eo nomine, or the same act or acts? Let us consult our Code. From

it we learn that an offense is an act or omission forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed by this Code. 'An act forbidden,' etc. From this we are not to infer that a single act in every case constitutes an offense. These, however, under this definition are considered the act which is forbidden or punished by law. To these acts or omissions the Code, in most of the cases, has given names. This, however, is conventional. To the act constituting larceny under the common law, the Code gives the name of theft. But back to the proposition! The Constitution prohibits placing a citizen twice in jeopardy for the same offense. Is the name given to the act or acts which constitutes the offense to control when we are seeking to determine whether it be the same offense or not, or must we not look to the act or acts, or the omissions prohibited and punished by the Code, in order to determine this question? We must, in determining whether they are the same offense or not, look to the act, acts or omissions; for these and not the name by which they are called or denounced by the Code. We, therefore, conclude that a person shall not be twice put in jeopardy for the same act, acts or omission, which are forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed in the Code." See along the same line Adams v. State, 16 Texas Crim. App., 162. Then under an indictment for murder what is the act, acts or omission that appellant is being tried for? It is the homicide; it is the killing. If he is acquitted of the killing; that is, any and every form of unlawful homicide, by a verdict of the jury, there is a constitutional inhibition against a new trial for said act, omission or offense. In other words, the Constitution does not contemplate that appellant can invoke the same unless he has had a jury to say by a verdict in a court of competent jurisdiction that he is not guilty of any personal violence to another, where he is indicted for murder. In other words, there is no constitutional inhibition against using what is ordinarily denominated murder evidence to convict one of manslaughter. If murder in the first and second degrees and manslaughter are different offenses, within the contemplation of the Constitution of this State, then under the first cited clause of the Constitution one could not be tried for murder and convicted for manslaughter, since the Constitution provides that he must have an indictment, which indictment must state the nature and cause of the accusation against him. If murder is a distinct offense within the contemplation of the Constitution, then one could not be legally indicted for murder and tried for manslaughter no more than he could be indicted for burglary and tried for arson. He must have an indictment charging the nature and cause of the accusation against him. The degrees of homicide are not distinct offenses but are merely grades of one common offense, to wit: homicide. Before appellant could ask the charge above quoted, we

would have to hold that one could not be indicted for murder and tried for manslaughter. If appellant, as stated, has a jury to return a verdict of not guilty under an indictment for murder or manslaughter, then he can plead this in bar of his subsequent prosecution, for the grade of offense for which he is so indicted, but upon the trial of a case of murder, where the jury returns a manslaughter verdict, and it returns for a new trial by reason of reversal or otherwise, it is a denovo trial as far as the introduction of evidence is concerned. There is a statutory inhibition, however, against the court, upon the subsequent trial, inflicting upon appellant the punishment for the grade of the offense of homicide of which he had been previously acquitted, but there is neither constitutional nor statutory inhibition against using the same evidence to prove the homicide upon the subsequent trial, and the conviction of appellant of any lower grade of homicide than that of which he had been previously acquitted. Article 762 of the Code of Criminal Procedure reads as follows: "If a defendant, prosecuted for an offense which includes within it lesser degrees, be convicted of an offense lower than that for which he is indicted, and a new trial be granted him, or the judgment be arrested for any cause other than the want of jurisdiction, the verdict upon the first trial shall be considered as an acquittal of the higher offense; but he may upon a second trial be convicted of the same offense of which he was before convicted, or any other inferior thereto." This is the only inhibition against a homicide trial in this State, where a new trial has been granted, the trial thereafter being in every instance denovo. Were it not for this statute, every trial for homicide under the Constitution of this State would be a denovo trial regardless of the previous verdict of the jury, since, as we have seen, there is no constitutional inhibition against the same being a denovo trial for every grade of the offense, but the inhibition is simply statutory. It will be seen from reading the above cited article that it only inhibits the penalty for the grade of offense for which he had been acquitted from being imposed in the second trial. If appellant on the first trial is acquitted of murder, how could he be convicted upon a subsequent trial for manslaughter upon evidence that only suggests murder in the first or second degree without using the evidence that was introduced upon the first trial in the subsequent trial? We know in practice that the State insists upon getting the witnesses who are cognizant of the facts; having secured said witnesses, they introduce them on the trial in the first instance. It is left to the judgment of the jury in the first instance to find appellant guilty of either murder in the first or second degree or manslaughter. Then the identical same evidence is alone the proof that the State can adduce upon the second trial, and this statute recognizes that fact, and says that upon the second trial he cannot be punished for the grade of offense of which he has been acquitted,

but can be punished for the same or any lower grade of which he has been previously convicted. When a party is indicted for murder under that form of criminal pleading, he can be convicted of any grade of culpable homicide thereunder. This conclusion is fortified by subdivision 9 of article 817 of the Code of Criminal Procedure, which reads as follows: "Where the verdict is contrary to the law and evidence. A verdict is not contrary to the law and evidence, within the meaning of this provision, where the defendant is found guilty of an offense of inferior grade to, but of the same nature as the offense proved." This statute is in line with the reasons above stated, and precludes any other conclusion than that the evidence in each instance can be used to convict of the lower grade of offense regardless of the previous verdict. If a party cannot get a new trial on the ground that he had been convicted of a lesser grade of offense than he is guilty of, then it follows as night follows day, that you can use murder evidence to convict one of manslaughter. If murder is a distinct offense from manslaughter, and not merely a different grade of homicide, an acquittal of a grade of murder is an acquittal of manslaughter, then, under the Constitution of this State you could not use murder evidence to convict for manslaughter, but they are not different offenses within the contemplation of the Constitution, but, as stated above, simply grades of one common offense, to wit: homicide. Furthermore, the decisions of this State have uniformly enforced the provision of the last cited article, and held that where one is being tried for an offense which contains grades and he is acquitted of the higher grade, and convicted of the lesser one, that he cannot come to this court and ask a reversal of the case on the ground that the evidence does not support the lesser grade. The authorities are so numerous on this question we do not deem it necessary to cite them. If the grades of homicide are different offenses within the contemplation of the Constitution, why cannot appellant complain that he is convicted of a lesser grade than he was charged with by evidence that only proves the higher grade? Certainly, if one was indicted for murder and convicted of disturbing the peace, it would not be any answer to his motion for a new trial to say that he had been punished for a lesser offense than he was guilty of under the evidence. We would promptly reply to that character of motion that he had been convicted of an offense of which he had no indictment against him, and it is only one theory and one theory alone that you can indict a man for murder and convict him of aggravated assault, and that is on the legal and constitutional theory that an indictment for murder includes within its legal scope all grades and character of unlawful violence to the person of another, and the different penalties attached to the different grades is not a reason for saying that there is an inhibition in the statutes or Constitution of this State against using evidence of the

higher grade to convict of the lower. Burnett v. State, decided at the present term and not yet reported. We accordingly hold that appellant's charge was not correct in law, and the court did not err in refusing to give same; and we further state that to whatever extent any decisions conflict with the views herein stated, they are hereby overruled.

6. Bill of exceptions No. 9 complains that the court erred in failing to give a charge upon self-defense based upon real and apparent danger. This charge was fully covered by the main charge of the court. The charge of the court appears quite full and is as follows: "8. A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"9. If from the evidence you believe the defendant killed the said George Highfill, but further believe that at the time of so doing the deceased had made an attack on him which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed and was making such attack on defendant, and if the weapon used by him and the manner of its use was such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant." In the light of this charge we do not think it was necessary to give appellant's special charge.

7. Appellant further insists the court should have charged on the law of retreat. The evidence in this case does not suggest said issue. It shows that deceased was sitting in appellant's butchershop when appellant went in and offered him a violent insult, which deceased immediately resented, and appellant shot deceased to death. Neither of them left the room. There was no retreat on the part of either evidenced by the record, and the law of retreat, therefore, is not involved in this case.

8. Bill of exceptions No. 10 complains that the court erred in failing to give charge No. 3, which in substance, tells the jury that if appellant provoked the difficulty with the intention to take the life of deceased, he would be guilty of murder, and if they so find they should acquit appellant. We have discussed this question above and there is no merit in same. The bill further complains that the court

erred in not charging the jury as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant provoked the contest with the deceased without any intention of killing or doing deceased any serious bodily injury, and that he suddenly and without deliberation did the act of killing, under the immediate influence of sudden passion arising from an adequate cause, as that term is defined in the main charge of the court, the homicide would be manslaughter. On the other hand, however, if the defendant did not provoke the difficulty with George Highfill with the intention of killing him or doing him serious bodily injury, or if you have a reasonable doubt as to whether or not he did, and further believe from the evidence, that defendant shot and killed the said George Highfill to prevent the said Highfill from murdering or inflicting serious bodily injury upon him, the defendant, and not in a sudden transport of passion arising from an adequate cause, then and in either event you will acquit the defendant and say by your verdict not guilty." The latter part of said charge, with reference to self-defense, was covered in the main charge of the court. That portion of the requested charge which presented the issue of manslaughter was pertinent and should have been given, but in view of the verdict in this case it is rendered entirely harmless not to have given same since the verdict of the jury in this case is for manslaughter.

The court gave the jury the following charge on the question of provoking a difficulty: "A person may have a perfect right of self-defense, though he may not be entirely free from blame or wrong in the transaction. If the blamable or wrongful act was not intended to produce the occasion, nor an act which was under the circumstances reasonably calculated to produce the occasion or provoke the difficulty then the right of self-defense would be complete though the act be not blameless. But you are instructed that a party cannot avail himself of a necessity which he has knowingly and willingly brought upon himself. Whenever a party by his own wrongful act produces a condition of things wherein it becomes necessary for his safety that he should take life or do serious bodily harm, then the law imputes to him his own wrong and its consequences to the extent that they may and should be considered in determining the grade of his offense (if any), which but for such acts would never have been occasioned. Now, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant made use of abusive language to and in the presence and hearing of the deceased, George Highfill, at the time of the fatal difficulty, concerning him, the said George Highfill, under circumstances reasonably calculated to provoke a breach of the peace, and that such language was used for the purpose and with the intent, on the part of the defendant, to provoke the deceased to attack him (defendant) and that said language used by defendant, if any, towards the deceased, was calculated to and did provoke the

said George Highfill to make an attack upon the defendant, and that it thereby became necessary or was apparently necessary for defendant (viewed from his standpoint), to take the life of said deceased, then and in that case the defendant would not be justified upon the ground of self-defense, in killing said George Highfill. But if you, on the other hand, find that the language used by defendant to and in the presence and hearing of deceased, was not calculated or intended to provoke a breach of the peace then and in such case the defendant's right of self-defense would not in any wise be abridged or lessened."

9. The court did not charge on any issue except manslaughter and self-defense. It is true this charge does not tell the jury of what offense appellant would be guilty if he provoked the difficulty with intent to commit a breach of the peace, but this could not injure appellant since he was only being tried for manslaughter. Now, if the court had given the charge insisted upon by appellant, - to wit: that if deceased provoked the difficulty without the intent to kill, he would be guilty of manslaughter, it would have been in substance the same charge that the court did give, since appellant, upon this trial, was only being tried for manslaughter. Furthermore, it would have been an offensive instead of a defensive charge and in the light of the verdict in this case, is rendered entirely harmless since the jury found appellant guilty of manslaughter. To say that appellant could complain that the jury were not charged upon another theory than that which was charged upon, upon which manslaughter could be predicated, is a complaint without merit and is a matter upon which appellant cannot be heard to complain. We have before us this kind of a case: The jury found appellant guilty of manslaughter upon one theory that was presented to the jury by the court. Now, appellant comes to this court and complains that the trial court should have presented another theory of manslaughter and asks this court to reverse the case therefor. The above quoted charge of the court shows that if appellant provoked the difficulty he could not justify on the ground of self-defense. In addition to that, the court gave a complete charge on manslaughter. Now, if the jury had been given the theory complained of, could it be rationally argued that they would have disregarded the theory upon which they convicted him and taken the theory that the court neglected to charge? We think not. But the converse would be the more rational conclusion; that is, appellant would have had a better chance to escape punishment in this case by only presenting the theory that the court did present, than he would have had if appellant's charge had been given. Under article 723 of the Code of Criminal Procedure of this State, we are not authorized to reverse a case unless the error was calculated to injure the rights of appellant and by no process of reasoning can we hold that the omission to charge upon the theory

of manslaughter suggested by appellant in his bill of exceptions, was calculated to injure him, but would simply have served to give the jury additional grounds of convicting him of manslaughter, of which offense he was found guilty.

10. The only other question we deem necessary to review is whether or not the issue of provoking a difficulty was suggested by the evidence in this case. On the trial of the case W. M. Burrell was placed upon the stand, and, among other things, testified that he was on the former jury that tried appellant for this homicide. In that trial the defendant testified that somebody, a boy he thinks, came up to his house and told him to come down to the shop; that he put on his overcoat and went down to the shop; that he went in the back door of his shop; he found deceased Highfill sitting on the opposite side of the room on a stool. Deceased had a pocket knife in his hand pecking on the bottom of the stool or whitling. He said deceased spoke to him, and said he was sorry to get him out a day like that and he sick. The language used by the deceased was "I am sorry to drag" or "pull you out a day like this, old man, and you sick, but I have got to have my money," or something to that effect. The language he used was, "Tuck, Old Man, I am sorry to drag you out a morning like this and you sick, but I have got to have my money," or "I want some money." Appellant testified his reply to deceased was that he (deceased) had robbed or stole out his business, and that he could not pay him any money, or had no money for him; something like that. That immediately after the defendant made this statement deceased got up out of his chair or off the stool and started towards him (appellant) ; that he (appellant) pulled his pistol and shot at him. He said he had his pistol in his right hand overcoat pocket; that he had his hand on his pistol when he walked to the door, or when he stepped to the door, and had his hand on his pistol in his pocket when he used the language he said he used to the deceased. On the trial counsel for the State asked defendant if he thought Highfill would resent what he said to him about robbing and stealing the business out, and he answered that he believed Highfill would resent it. "You asked him whether or not he thought Highfill would resent the remark used as to his robbing or stealing the business out, and defendant answered that he thought Highfill would resent it; and then you asked defendant what he intended to do if Highfill did resent the remark, and he answered that he intended to protect himself if Highfill did resent it. That may not be the exact words, but it is the substance of what he said." This testimony was also reproduced by the stenographer who took defendant's evidence down at the former trial, and the stenographer's notes show substantially the same as above. Under every decision that has ever been rendered in any court, this evidence clearly shows a provoking of the difficulty. Here we are not left to con-

jecture as to whether words were intended to provoke a difficulty, but appellant himself admits he used the language expecting that it would provoke a difficulty; that he had his pistol in his pocket and his hand on his pistol expecting to use same if deceased did resent the insult offered. It is true that the statutes of this State say no verbal provocation shall justify assault, but we are not discussing that question here. If deceased had been living and had cut the defendant because defendant said he had robbed him, the insult could only be used in mitigation of deceased's punishment, but any words that are calculated to provoke and do provoke a difficulty, and are so intended, will be and are a basis for a charge on provoking a difficulty. The record before us shows that defendant knew it would provoke a difficulty, or at least thought it would; that he used it for that purpose, and had his weapon ready to shoot if it did cause a difficulty.

11. The court gave the following charge on self-defense: "A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If from the evidence you believe that the defendant killed the said George Highfill, but further believe that at the time of so doing the deceased had made an attack on him which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed and was making such attack on defendant, and if the weapon used by him and the manner of its use was such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant."

Appellant complains that the charge is erroneous, because of the following phrase therein: "and the relative strength of the parties and defendant's knowledge of the character and disposition of the deceased," appellant insisting that the record before us does not show the knowledge on the part of the defendant and the character and disposition of the deceased, and that the relative strength of the parties has nothing to do with this case since it was a killing by the use of a firearm. We have held that the strength of parties where firearms are the instruments used to commit the homicide is not a

basis for passing upon the guilt or innocence of the parties. But certainly this clause could not have injured appellant in this case. The record does not show the size of the deceased, and the defendant was before the jury, and they could judge of his size, but certainly no juror could form any conclusion from said statement injurious to the rights of appellant in this case, and furthermore, the defendant's knowledge of the character and disposition of deceased is made clearly manifest by this record since they had been partners in the butcher business. The charge is a correct presentation of the law of self-defense; it informs the jury that they must look at the facts from the defendant's standpoint, and that he could defend against an apprehension or expectation or fear of death or serious bodily injury. The charge being ample to protect appellant's rights in this case, it certainly was not error not to give another charge on the question.

There is nothing in this record that requires a reversal of this case, and the judgment is in all things affirmed.

*Affirmed.*

[Motion for rehearing overruled October 21, 1908, without written opinion.—Reporter.]

DAVIDSON, PRESIDING JUDGE (dissenting).—I am unable to concur, and file some of the reasons for my dissent.

Appellant was convicted of manslaughter and allotted the maximum punishment in the penitentiary for that offense.

A brief statement of the facts show that appellant and deceased, George Highfill, had been partners in the butcher business. Owing to trouble arising between them, appellant had bought the interest of Highfill and continued the business. Just before purchasing Highfill's interest, there came up some words between them, during which conversation appellant said to the deceased that he, deceased, was robbing the business. Deceased drew his knife and threatened to cut the throat of appellant. Shortly afterwards appellant bought out Highfill's interest, and continued to run the same under his own name. A part of the purchase price was credit. Deceased called on appellant several times for money before the deferred payments were due, and at the time of the killing appellant still owed the deceased a deferred payment of $75, which was not due. Deceased made quite a number of threats against the life of appellant on account of his not paying this money, such as that he would "kill the old ball-headed son-of-a-bitch, and that he would cut his head off," etc. Most of these threats were communicated to appellant. These continued up to within twenty-four hours of the homicide. On the morning of the homicide appellant was sick, and remained at his residence. Deceased went to the market; failing to find appellant, requested appellant's son, who was in charge of the

market at the time, to send for his father; that he wished to see him. In response to this call appellant came to the market where Highfill had located himself in the rear room of the market. Appellant went to the room where deceased was sitting on a chair or stool; a conversation ensued. Appellant's son was the only witness to the conversation and immediate occurrences attending the tragedy except the reproduced statements of appellant's testimony on a previous trial. These reproduced statements were to the effect that when he received the message from deceased to meet him, it being cool weather, he donned his overcoat and placed in its right-hand pocket a pistol, and proceeded to the point of meeting. He further stated, substantially, that he anticipated trouble, or that may be deceased would attack him and, therefore, he carried his pistol; that when he entered the room where deceased was, deceased told him he must have his (deceased's) money; that he (appellant) replied, "You have robbed the concern or the business, and I have no money for you,' or substantially such language; that the deceased immediately replied, "You are a God damned liar," and started towards him (appellant) with his knife in a threatening manner as if to make an assault upon him; that at the time he entered the room where deceased was sitting on the stool, deceased had his knife open, and when the deceased got up and started towards him he told him twice to stop; he did not and he (appellant) fired two shots, one as deceased was coming towards him, and the second when he was just in the act of turning. Appellant's son hearing the conversation, went to the room where they were, and a portion of his testimony is as follows: "When I got back there Highfill was sitting down in a chair, just getting up, near the north wall, about six or eight feet from the back door leading out into the yard. Papa was standing right in the door, but I don't know whether just inside or outside of it. I don't know what had been said between them before I got back there. When I started back there I heard papa say, 'George, you have not treated me right about this money. It is not due.' I do not know just what George said in reply. I think George said, 'You are a God damn liar.' When he said that he was just raising up from the chair, and had his knife in his hand, with it like this (indicating) and then he started to run towards papa. Papa was standing still at that time, I think, and he told George to stop, but he kept coming and papa shot. When the first shot was fired Highfill was whirling to the right." This record further shows that appellant had on a previous trial been acquitted of murder in both degrees, and convicted of manslaughter. Objection was urged to the introduction of the statements of appellant before the former jury, he not taking the stand in his own behalf on the trial which resulted in this conviction. The bills of exception are perhaps not sufficient to raise

these questions as they do not contain the statements introduced in evidence. This is a sufficient statement of the case to review some of the questions thought to be of importance.

Quite a number of exceptions were reserved to the charge as given— some to the omission of the court to charge certain phases of the law, and some to the refusal to give requested instructions asked by appellant. These matters are properly presented by bills as well as made grounds of the motion for a new trial.

The court's charge on self-defense is criticised: That portion is as follows: "If from the evidence you believe the defendant killed said George Highfill, but further believe that at the time of so doing the deceased had made an attack on him which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed and was making such attack on defendant, and if the weapon used by him and the manner of its use were such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant." Then follows a charge on provoking a difficulty. I believe the special charges requested covering these matters should have been given, inasmuch as, in my opinion, the charge on self-defense was wrong, and that with reference to provoking a difficulty was not called for by the facts. The charge on self-defense is based upon the supposition that the danger was *actual* and not *apparent*. Under our authorities I believe this charge should have submitted not actual but apparent danger. See Phipps v. State, 34 Texas Crim. Rep., 560; Stewart v. State, 40 Texas Crim. Rep., 651; Curtis v. State, 59 S. W. Rep., 1900, 264; Seeley v. State, 63 S. W. Rep., 310; Brady v. State, 65 S. W. Rep., 522, and Graham v. State, 61 S. W. Rep., 715. These cases are directly in point as I understand them. In the Brady case the defendant and deceased were at a wagon on opposite sides; a war of words came up between them; the deceased started around the wagon to where appellant was, drawing his knife as he did so. Just as he turned around the wagon towards the side on which appellant was standing, he (appellant) shot and the deceased was killed. A similar charge to the one under consideration was given in that case, and the judgment was reversed. In the Seeley case, supra, trouble came up over a charge that appellant had been killing some horses in a certain brand, which he denounced as false, whereupon the deceased either had picked up or was in the act of picking up an iron bar of considerable weight and length

for the purpose of attacking appellant, and appellant shot and deceased was killed. A similar charge as the one in this case was held error. So the question may be pursued through the other authorities already cited, which I deem sufficient without collating a greater number. The charge in the Brady case, as in perhaps other cases subsequent, has been criticised because it made appellant's defensive theory depend somewhat upon the relative size and strength of the parties. This charge has been criticised where there is no evidence of that character in the record. It would make no difference in regard .to the relative strength and size of the parties in a fight with deadly weapons, as a general rule, for the deadly weapon would be as dangerous in the hands of a small man as in the hands of a giant, and appellant's defense should not be limited in that manner, especially in the absence of evidence in regard to the question. As I understand the record, the only testimony in regard to size of the parties is that the deceased was about five feet and seven inches high, and weighed about 135 pounds. As to the relative strength of the parties, nothing is shown, nor could it well be an issue in the case because of the fact that there was no contest of strength between them. Deceased never reached appellant; appellant shot him before he could get to him.

As before stated, I am of opinion that the issue of provoking a difficulty is not in the case. It certainly is not under the testimony of the son of appellant. I suppose the statements of appellant on a former trial were relied upon to make this an issue in the case. Recurring to that testimony for a moment, it would seem that appellant stated on a former trial that he went to the place where there was some anticipation of trouble. This was at the request of deceased who had threatened to kill him if he did not pay the money demanded. The money was not .due. Appellant armed himself in anticipation of this trouble, and went, as he states, if the trouble came up, prepared to defend himself, and that he intended, if the trouble came up, to take care of himself; that when he reached the place deceased demanded payment of the money, and, in substance, he replied, "You have robbed the concern or robbed me, and I have no money for you." If provoking a difficulty is in the case, it is from this testimony. Our statute, article 701, Penal Code, is as follows: "Insulting words or gestures, or an assault and battery, so slight as to show no intention to inflict pain or injury, or an injury to property, unaccompanied by violence, are not adequate causes." Penal Code, article 595, is as follows: "No verbal provocation justifies an assault and battery, but insulting and abusive words may be given in evidence in mitigation of the punishment affixed to the offense." If these statutes mean anything, they mean that verbal provocation will not justify an assault, and can only be given in mitigation. That insulting words do not

justify an assault see Polk v. State, 30 Texas Crim. App., 657; Barbee v. State, 34 Texas Crim. Rep., 129; Timon v. State, 34 Texas Crim. Rep., 363; White v. State, 23 Texas Crim. App., 154, and Cartwright v. State, 14 Texas Crim. App., 486. See also White's Annotated Penal Code, secs. 981 and 1201. The Polk case, supra, is, in my judgment, directly in point. This opinion was by the lamented former presiding Judge Hurt of this court, and in my judgment very clearly states the law. He is also the author of the opinion in the Cartwright case, supra. See those cases for a full discussion of the question. Appellant was called upon to meet the deceased, and at the request of deceased did meet him; anticipating danger from the previous threats of the deceased, he (appellant) armed himself as a precautionary measure, and it seems from the after facts that he was justified in so arming himself, under the law. Appellant requested a special charge on this phase of the law, which the court refused. The deceased had stated that he intended to kill appellant if he did not pay the money; the money was not due, and he (deceased) had no right to call on appellant for it. Appellant stated to the deceased in effect, "you have robbed the concern, and I have no money for you." The deceased immediately replied, "You are a God damned liar," and started at appellant with his open knife. The insulting words of appellant did not afford justification for deceased making this or attempting to make this assault with the knife upon appellant; had he (deceased) been upon trial he could have used the insulting language of appellant towards him as a mitigation of the penalty, but it did not justify his moving on appellant with his drawn and open knife. Appellant's right of self-defense matured at once, and the fact that he may have used insulting language did not eliminate self-defense, for, as Judge Hurt says, "To use such language to a person is not recognized in law as a provocation when the one so insulted proposed to act under it or justify himself for the assault and its consequences." Under this state of facts, from any standpoint, the defendant's statement, and his son's testimony, that deceased was the attacking party, he (deceased) was not justified in making this attack or approaching appellant with a view of making the attack because of the insulting conduct, and left appellant the right to act. The cases cited all support this conclusion, as does the statute law itself. Now, appellant was not in the wrong when he met deceased at his (deceased) request, and the insulting words that are charged up to him by the State did not put him in the wrong to the extent of depriving him of his right of self-defense. See Shannon v. State, 35 Texas Crim. Rep., 2. The Shannon case has been approved in the following cases: Airhart v. State, 40 Texas Crim. Rep., 470; Winters v. State, 37 Texas Crim. Rep., 582; Hall v. State, 66 S. W. Rep.,

785; Thomas v. State, 51 S. W. Rep., 1110; Hall v. State, 60 S. W. Rep., 771, and Johnson v. State, 66 S. W. Rep., 846.

The charge is further criticised because the jury were not charged that appellant had the right to shoot as long as the danger existed. This charge was not given, but should have been. There were two shots fired. There is a little confusion as to the condition of the parties after the first shot. Some of the testimony put deceased in the act of turning, thus leaving his side to appellant. There is no evidence of an abandonment of the difficulty by deceased. The shots came as rapidly as two shots could be fired from a pistol, or practically so. The accused, under all the authorities in Texas, where the question has been discussed, has the right where self-defense is the issue not only to shoot in the first instance to protect his life or his body from serious personal injury, but has the further right to continue shooting until relieved of all such danger, and under the circumstances of this case I am of opinion this phase of the law should have been given. A charge was asked by appellant pertinently submitting this issue to the jury, which was refused by the court.

Appellant requested an instruction to the effect that if he had been previously acquitted of murder in the first and second degree, and the jury should find that evidence on this trial raised murder in the first or second degree, they should acquit. This was predicated upon the fact that he (appellant) had been formerly acquitted of both degrees of murder and convicted of manslaughter. The theory of appellant as to the law in that character of case is that if appellant is acquitted of murder altogether and convicted of manslaughter, and upon the subsequent trial the facts only show murder, he is entitled to an acquittal. This is a very serious question, and one that the writer has not found in any of the cases in this State to have been discussed elaborately. In Parker's case, 22 Texas Crim. App., 107, it was decided that where a party had been previously acquitted of murder and convicted of manslaughter, and subsequently tried for manslaughter, that the court was in error in charging the jury substantially that the evidence sustaining murder would justify the jury in convicting of manslaughter. The court reversed the judgment because of this charge, and correctly so. It is a fundamental proposition in this State about which there can be no contest or discussion, and the statute so provides, that the court must deliver to the jury a written charge in which he distinctly sets forth the law applicable to the case. Code of Criminal Procedure, article 715. It may be pertinent to suggest at this point that the offense of which appellant stood indicted at the time of his trial was manslaughter; he had been acquitted of murder in both degrees, and the case stood, so far as the State was concerned, on manslaughter. The law applicable to the case then was

the law applicable to manslaughter and not murder. It would hardly require authorities to sustain this proposition. It is the statute and the Constitution and it is the unbroken current of decisions in the history of Texas. It may arise sometimes that it is necessary to define higher and lower offense, etc., in order to fit the law to the case on trial, and to explain matters so the jury can get a clear conception of the law applicable to the case they are trying and are to decide. However, in a trial for manslaughter, it is not necessary to instruct with reference to the law applicable to murder for the purpose of enabling the jury to understand the law of manslaughter, for it is an offense distinctly defined and explained by the Code, whose elements are essentially different from murder. Murder is the killing of a human being upon express or implied malice, malice being the distinguishing feature that constitutes murder where the death of a human being is brought about as against manslaughter, which is an intentional and voluntary killing, but in a condition of mind incapable of cool reflection, and which excludes malice, because if the mind is cool and deliberate and the killing occurs, it is murder and not manslaughter, it being essential to manslaughter that the adequate cause exists as well as the passion, which the law demands, and which renders the mind incapable of cool reflection. Wherever these combinations exist murder is excluded. To quote from the Parker case, *supra,* "It seems to us that, as the defendant has been acquitted of murder, he can only be tried and convicted of manslaughter. If the evidence shows that he is guilty of murder, he can not be convicted of that offense, because he has been tried therefor and acquitted. He can not be convicted of manslaughter, because if guilty of murder he is not guilty of manslaughter, the two offenses being essentially different, although grades of homicide. It is true that when the indictment charges murder, and the defendant is on trial for that crime, he may be convicted of any grade of homicide, and if convicted of a lower grade than murder in the first degree, the conviction will not be set aside because the evidence proves that he is guilty of a higher grade than the one of which he is convicted. (Baker v. State, 4 Texas Crim. App., 223; Powell v. State, 5 Texas Crim. App., 234.) But here the defendant was not on trial for murder, and could not be convicted of murder, and yet the court tells the jury to convict him of manslaughter if he is guilty of murder.

"There is a marked difference between this case and the case of a defendant charged with and on trial for murder. Every indictment for murder includes manslaughter, and the jury may acquit of murder and convict of manslaughter, at their discretion. But manslaughter does not include murder, and a party charged with

Vol. 54 Crim.—13.

and on trial for manslaughter can not be convicted of murder, and especially of a murder of which he has been acquitted." The Parker case has been endorsed in all subsequent cases so far as the writer is informed. The Fuller case, 30 Texas Crim. App., 559, recognizes the Parker case as correctly decided, but in that case it was held that as appellant was only convicted for murder in the second degree, the rule in the Parker case did not apply. In Conde's case, 35 Texas Crim. Rep., 98, this rule was again sustained as it was in the Mixon case, 35 Texas Crim. Rep., 458, and again it was recognized in the Scroggins v. State, 32 Texas Crim. Rep., 71. In regard to the Pickett case, 43 Texas Crim. Rep., 1, Pickett was convicted of manslaughter; the evidence upon the second trial, which was for manslaughter, he having been acquitted of murder in both degrees formerly, showed manslaughter. Appellant undertook to offset the State's case of manslaughter with evidence for murder. It was held that this was not permissible; that appellant would not be permitted to use evidence in a case in which he had been found innocent of the higher offense to offset a case proved by the State of the lower offense. In other words, these authorities establish the rule that if the evidence raises the issue of manslaughter on the second trial, that the State would have the right to have that issue submitted to the jury, and a conviction being obtained, would be sustained, but that appellant would not be justified in offsetting this case by facts which proved the higher offense. Const. art. 1, sec. 14; Code Criminal Procedure, articles 9, 20, 561, 762. It has been the universal rule in Texas that where there are degrees in the offense, that the acquittal of the higher results from a conviction of the lower, and that where the party has been once acquitted of the higher, there can be on trial of the higher by reason of such acquittal. See Cheek v. State, 4 Texas Crim. App., 444; Jones v. State, 13 Texas Crim. App., 1, and White's Code of Criminal Procedure, article 9, and article 20, and notes with collation of authorities. Also section 537, White's Code of Criminal Procedure for collation of authorities. In Mixon v. State, 35 Texas Crim. Rep., 458, this matter underwent rather an elaborate discussion, the opinion being by our late Brother Henderson. Mixon had been formerly tried and acquitted of murder, and the indictment on appeal was held to be vicious. The judgment was reversed and prosecution dismissed. Subsequent indictment was found, charging him with murder, for which he was tried and allotted twenty-five years in the penitentiary for murder in the second degree. The judgment was reversed. This language is found: "It has been heretofore held by this court that indictments of the character on which appellant has formerly been tried were defective indictments, and so the question here presented for our determination is whether or not, in a case in which a defendant has been tried in a court

of competent jurisdiction for murder, on an invalid indictment, and has been convicted under such indictment of manslaughter, can he again be put on trial for either murder in the first or second degree? It has been held by this court repeatedly that where an indictment includes different degrees, and a defendant is tried and convicted of a lesser degree, he stands acquitted of all higher degrees of said offense; and in such case it is not necessary that the verdict formally acquit him of such higher grades. The effect of a conviction of a minor grade is tantamount to an acquittal of all grades of offense above that." See Code of Criminal Procedure, articles 713 and 724; Jones v. State, 13 Texas, 1; Robinson v. State, 21 Texas Crim. App., 160. The conviction in the case before us was of manslaughter. Unquestionably, if the indictment was a good and valid indictment, it acquitted him of all degrees of felonious homicide above that. See Parker v. State, 22 Texas Crim. App., 105; Fuller v. State, 30 Texas Crim. App., 559; Conde v. State, 35 Texas Crim. Rep., 98; Harvey v. State, 35 Texas Crim. Rep., 545; Coleman v. State, 43 Texas Crim. Rep., 280.

"The proposition now before us is, the indictment in the present case being defective and invalid to the extent that a legal conviction thereunder could not be maintained, does the acquittal under such an indictment of murder in the first and second degrees bar a prosecution on a new and sufficient indictment for said offenses? To this question there is but one answer, whether viewed from the provisions of the Constitution, art. 1, sec. 14, from legislative enactment, Code of Criminal Procedure, Articles 9, 20, 561, 762, or judicial opinion, and that is, that wherever a party is placed upon trial for murder under a bad indictment, and there has been an acquittal of any offense charged in it, that it can be plead in bar of a prosecution on a valid indictment. Our Constitution provides that, 'no person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.' It will not be questioned that the district court in which appellant was convicted is a court of competent jurisdiction, nor that he was acquitted of murder in both degrees and upon a valid indictment, and so it is that wherever a party is tried in a court of competent jurisdiction, and an acquittal is secured, it makes that acquittal a bar against subsequent prosecution for the same offense regardless of the validity of the indictment. See Anderson v. State, 24 Texas Crim. App., 717; 7 S. W. Rep., 40. But the matter does not rest alone with the constitutional provision, which ought to be and is the controlling law in this State. Wherever the Constitution speaks, the Legislature and the judiciary must bow in submission to the will of the people as therein expressed, but the question does not rest here. Our Code of Criminal Procedure,

article 561, provides, "The only special pleas which can be heard for a defendant, are (1) that he has been before convicted legally in a court of competent jurisdiction of the same accusation, after having been tried upon the merits for the same offense; (2) that he has been before acquitted by a jury of the accusation against him, in a court of competent jurisdiction, whether the acquittal was regular or irregular." This article apparently draws a distinction between conviction and acquittal, but it is not necessary here to notice that difference nor the reason for the difference. It will not be contended, maintained, or sought to be maintained, that either an acquittal or a conviction under a valid indictment would not constitute a bar to further prosecution for the same offense. This is so under our jurisprudence, as it was at common law. Our Constitution and statutes, however, take one step in advance of that position, for it says, when a party has been once tried by a jury and acquitted in a court of competent jurisdiction, he can never again be put on trial for that offense, and it would make no difference how irregular the procedure may have been, the State's case is at an end, and the defendant has been acquitted. If this is true, under our Constitution and laws, with reference to an indictment that is bad on its face, how much stronger the reasoning would be that it would constitute a bar where the indictment was entirely valid and formal in all its allegations. There sometimes arise questions where learned or unlearned writers of opinions draw fine distinctions with great ability, or with less shrewdness defining law, seeking to define this expression or that expression used in constitutional provisions or statutes, but we understand such fine distinctions are not to be indulged when they have a tendency to override the plain provisions of the Constitution, or give it some technical meaning which deprives a citizen of the rights that he has reserved to himself in the organic law. In our State it seems to be rather a fundamental proposition, and so stated in our statutory law, that the wording of our written law shall be interpreted or given the ordinary meaning of those words; that is, according to the plain import of the words used. If our Constitution means anything when it says that no person for the same offense shall be twice put in jeopardy of life or liberty, or that he shall not again be put upon trial for the same offense after a verdict of not guilty before a court of competent jurisdiction, it means what it says. The language used is plain unambiguous and would hardly need construction. What may be an offense or the same offense has been discussed by various courts, but always or practically so, in connection with the particular statute, or the environments of the case made under the particular statute. The Legislature has been confided, it seems, with rather ample authority to create offenses, and has done so with marvelous energy. That body is authorized to define and classify

offenses and make each independent of the other, and the punishment in each offense dependent upon the particular definition stated, and the courts would not be authorized to interfere with these offenses or give them a different meaning from that intended by the Legislature.

In the case of Hirshfield v. State, 11 Texas Crim. App., 207, Judge Hurt went into somewhat of a discussion as to what is the same offense in regard to two statutes involved in that decision. The question at issue in the Hirshfield case was whether or not a party could be convicted for swindling under a certain statute, when that statute provided if the facts constituted any other offense than swindling the party should not be charged with swindling, but he should be charged under the other statute and with the other offense. He discussed the subject from the standpoint of these two statutes that the same acts were necessary to constitute a violation of both. When viewed in the light of the question discussed by that able jurist, the Hirshfield · opinion is correct, but it has no application to a prosecution where the offense has degrees, as is the case here. To quote from Judge Hurt: "But to the proposition. Is the defense, to wit: former conviction of the swindling, a legal one to the indictment for uttering this forged instrument?" After quoting the section of the Constitution already cited, this question was asked: "What is meant by the term 'same offense?' Does it mean the same offense eo nomine, or the same act or acts?" Let us consult our Code. From it we learn that an offense is an act or omission forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed by this Code. From this we are not to infer that a single act in every case constitutes an offense. In a great many offenses several acts are necessary to constitute an offense. These, however, under this definition are considered the act which is forbidden or punished by law. To these acts or omissions the Code, in most of the cases, has given names. This, however, is· conventional. To the act constituting larceny under the common law, the Code gives the name of theft. But back to the proposition!

"The Constitution prohibits placing a citizen twice in jeopardy for the same offense. Is the name given to the act or acts which constitutes the offense to control when we are seeking to determine whether it be the same offense or not, or must we not look to the act or acts, or the omissions prohibited and punished by the Code, in order to determine this question? We must, in determining whether they are the same offense or not, look to the act, acts or omissions; for these and not the name by which they are called are denounced by the Code. We, therefore, conclude that a person shall not be twice put in jeopardy for the same act, acts or omission, which are forbidden by positive law, and to which is annexed, on

conviction, any punishment prescribed in the Code. A conviction, therefore, for swindling which rests upon and is supported alone by the act of passing as true the instrument set forth in this indictment is a full and complete satisfaction of the law which forbids, and upon conviction prescribes, a punishment for said act.

"The act of knowingly passing as true a forged instrument is denounced by positive law, with a punishment annexed which is prescribed by the Code. This act, as was foreseen by our law makers, enters into and constitutes the vital elements of, at least, two offenses, to wit: swindling and knowingly uttering a forged instrument as true. The act, however, being the offense, and not the name, a conviction for this act would be a complete satisfaction of the violated law. But we are met just here with the proposition that, as the defendant could not have been convicted under the indictment for swindling of the offense of knowingly passing as true a forged instrument, therefore he can not plead this conviction for swindling to a prosecution for uttering a forged instrument. We are aware that in Thomas v. State, 40 Texas, 36, and the books generally, this proposition is stated, and as a general proposition we think it is correct. But it must be borne in mind that there is another principle applicable to this subject of jeopardy, which is quite distinct from that which obtains in pleas of former conviction or acquittal generally. This is the doctrine of carving, and is explicitly recognized and effectually applied in a number of cases by our Supreme Court and Court of Appeals. Quitzow v. State, 1 Texas Crim. App., 47; Wilson v. State, 45 Texas, 76; State v. Damon, 2 Tyler, 387; State v. Williams, 10 Humph., 101; Lanpher v. State, 14 Ind., 327; State v. Nelson, 29 Me., 329; Bon v. State, 22 Ala., 9; Rex v. Benford, Barr, 980; Clem v. State, 42 Ind., 420." Without discussing the question of the doctrine of carving as applicable to the plea of former conviction and acquittal as announced in the Quitzow and other cases, and followed in a long line of subsequent cases, we pass a portion of the Hirshfield case to this point: "We will not discuss the very perplexing question which arises in a case where the first indictment covered a part only of the acts or grounds which are occupied by the allegations of the second; for a conviction of the swindling in this case required every act, and utilized the whole ground which is covered by the offense of uttering a forged instrument. The knowledge, intent and acts which constitute uttering a forged instrument were not only the necessary means in this case, but were actually applied to obtain the conviction of swindling. This being the case, the conviction for swindling could be interposed to a prosecution for uttering the forged instrument, and if this can be done the effect would be to take the case out of the operation of art. 443, which defines another offense, thus accomplishing the very ends expressly forbidden

by art. 773 of the Penal Code." Then to sum up, Judge Hurt says, "We, therefore, conclude, 1st, that under the Constitution in regard to jeopardy, 'no person shall be twice put in jeopardy for the same act or omission, whether the offense be the same eo nomine or not.' 2d. That a conviction of the swindling in this case can be pleaded in bar to a prosecution for uttering a forged instrument. 3d. And that this conviction (being a good bar to a prosecution for uttering the forged instrument), has the effect to take the case out of the operation of the law defining another offense, and therefore illegal." The case was reversed and the prosecution dismissed.

The Hirshfield case was followed in the latter case of Witherspoon v. State, 37 S. W. Rep., 434, and in Scott v. State, 40 Texas Crim. Rep., 108. Judge Hurt also participated in the rendition of the Witherspoon case, which reaffirms the doctrine announced in the Hirshfield case. If I understand the doctrine of the Hirshfield case, carried to its legitimate end and purpose, the State would be in a very serious condition in regard to appellant's case here, because, whether the conviction was for murder or manslaughter, the identical act had to be economized in order to obtain the conviction. The difference between the two offenses of murder and manslaughter being found in the fact that one requires malice, and the other absence of malice, and by a party whose mind was actuated by a want of a sufficient ability to contemplate the nature and consequences of his act. The act of shooting was · the same, whether it was manslaughter or murder; the parties engaged in the prosecution are the same. The difference, as before stated, between the offense of murder and manslaughter, is found in the peculiar facts which distinguish the two offenses under the statutory definition of each. To have followed the rule insisted on by the prosecution in this case, as applied in the Hirshfield and Witherspoon decisions, would have exonerated appellant absolutely from all prosecution by reason of his acquittal of the two degrees of murder, if it be a fact that it was the same offense, for the real act was the same. Under that decision appellant should have been discharged. Judge Hurt did not understand the Hirshfield case, when he wrote it—should have the effect sought to be given it now, and this is found in the further fact that while upon the bench, he sanctioned the Parker case, 22 Texas Crim. App., 105, and the Fuller case, 30 Texas Crim. App., 559; and the Conde case and Mixon case, supra, and that question as decided in those cases, as long as he remained upon this court, and that he also adhered to the decision of the Hirshfield case when the question there involved came again before this court is demonstrated by the decision in the Witherspoon case, supra, and further, he did recognize both lines of decisions to be correct. Judge Hurt also rendered an opinion, which it may not be amiss to refer to for a moment; the Whitford case, 24 Texas

Crim. App., 489. In that case, which was a charge of conspiracy to commit burglary, appellant set up the fact that he had previously been convicted of the burglary. The question came up as to whether or not, having been convicted of the burglary, the facts used in convicting of the burglary could be used to prove the previous conspiracy. A plea denominated former jeopardy was interposed, which was stricken out by the trial court. The question turned on whether or not the ruling of the trial court was correct. Judge Hurt, speaking for the court, held in the negative, placing it purely and simply upon the statute, which provides that when the conspiracy to commit a felony has been agreed to, the offense of conspiracy is complete whether the crime about which the conspiracy was formed was executed or not; that they were different offenses, made so by the statute; occupying different territory, and usually requiring or was based upon different facts, and the doctrine was there laid down that if the same evidence had been required in both cases, conspiracy and burglary, the doctrine of carving would apply, which is but a different way of putting jeopardy, and in such case the accused could not be prosecuted for the second offense. It would hardly be contended, in a homicide case, where the facts show conclusively the homicide was committed in the perpetration of robbery that appellant could be convicted of manslaughter, because the Legislature has made the offense of murder in the way indicated, and manslaughter with its entirely different intents and constituent elements different offenses. A homicide committed in the perpetration of rape would not support or justify a conviction for manslaughter, simply for the reason the Legislature has provided the other way. The Legislature had the power to carve out offenses and grade them such as is done in homicide. The Hirshfield case was not discussing such offenses.

The trial of an accused person, finding him guilty of an offense of the lower grade than the higher charged in the indictment, is such an acquittal of the higher charge as will protect him from danger of conviction of the higher on a second trial, and the authorities so hold, and that when he moves for a new trial, such motion is based on the issue which has been determined against him, and he, therefore, waives his constitutional guarantee that he shall not be twice put in jeopardy for the offense of which he was found guilty, only so far as is necessary to obtain a new trial on that issue. He does not waive his constitutional right as to those degrees of the offense of which he was by the verdict expressly or inferentially acquitted; nor can he be retried for any higher grade of offense than that of which he was found guilty on the former trial. Constitution, art. 1, sec. 14; Code of Criminal Procedure, arts. 9, 20, 561, 762. The cases in this State have already been cited in the former part of this opinion. See also Lopez v.

State, 2 Texas Crim. App. 204; Black v. State, 68 S. W., 683; Coleman v. State, 43 Texas Crim. Rep., 280; Davis v. State, 39 Texas Crim. Rep., 683; 47 S. W. Rep., 978; Code of Criminal Procedure, art. 590. In addition to those I desire to cite other cases, as follows: State v. Leavitt, 87 Me., 79; State v. Leavitt, 32 Atlantic, 789; Bell v. State, 48 Ala., 684; Lewis v. State, 51 Ala., 1; Fields v. State, 52 Ala., 348; Nutt v. State, 63 Ala., 180; Smith v. State, 68 Ala., 424; Johnson v. State, 29 Ark., 31; People v. Gilmore, 4 Cal., 376; People v. Backus, 5 Cal., 275; People v. Apgar, 35 Cal., 389; Jordan v. State, 22 Ga., 545; Brennan v. People, 15 Ill., 511; Sipple v. People, 10 Ill. App., 144; State v. Tweedy, 11 Iowa, 350; State v. Clemons, 51 Iowa, 274; State v. Hornsby, 8 Rob. (La.), 583; State v. Chandler, 5 La. Ann., 489; State v. Desmond, 5 La. Ann., 398; State v. Byrd, 31 La. Ann., 419; State v. Dennison, 31 La. Ann., 847; State v. Lessing, 16 Minn., 75; Morris v. State, 8 Smedes & M., 762; Hunt v. State, 25 Miss., 378; State v. Ball, 27 Mo., 324; State v. Ross, 29 Mo., 32; State v. Kattlemann, 35 Mo., 105; State v. Smith, 53 Mo., 139; State v. Norvell, 2 Yerg., 24; Campbell v. State, 9 Yerg., 333; Slaughter v. State, 6 Humph., 410; Livingston v. Commonwealth, 14 Gratt., 592; Stuart v. Commonwealth, 28 Gratt., 950; State v. Martin, 30 Wis., 216; State v. Belden, 33 Wis., 121. It has also always been held that where an indictment contains different counts and the accused has entered a general plea of not guilty, and has gone to trial upon the indictment as presented, and was convicted upon one of the counts, and the verdict was silent as to the other counts, the legal effect of such verdict is an acquittal of all other counts except that specified by the jury. See Wharton Criminal Pleading and Practice, sec. 740; Nabors v. State, 6 Ala., 200; Nancy v. State, 6 Ala., 483; Bell v. State, 48 Ala., 684; Stephen v. State, 11 Ga., 225; Hayworth v. State, 14 Ind., 590; Clem v. State, 42 Ind., 420; Bittings v. State, 56 Ind., 101 (there are several other cases from Indiana holding the same doctrine). See also State v. McNaught, 36 Kan., 624; State v. Phinney, 42 Me., 384; State v. Watson, 63 Me., 128; Edgerton v. Commonwealth, 5 Allen, 514; Morris v. State, 8 Smedes & M., 762; Swinney v. State, 8 Smedes. & M., 576; State v. Brannon, 55 Mo., 63; State v. Cofer, 68 Mo., 120; State v. Gannon, 11 Mo. App., 502; Guenther v. People, 24 N. Y., 100; People v. Dowling, 84 N. Y., 478; Girts v. Commonwealth, 22 Pa. St., 351; Livingston v. Commonwealth, 14 Gratt., 592. In this State it is also the settled law that where an indictment contains more than one count and the court submits but one of the counts, that it is tantamount to an election, which is binding upon the State. Of course, the election would be binding if the representative of the State were to make such an election, and it is the settled rule in Texas that wherever a party has plead to an

indictment and been placed upon trial, that jeopardy attaches at once, and as to all counts to which he pleads. See Rudder v. State, 29 Texas Crim. App., 262. The fact that under some circumstances the discharge of the jury impairs appellant's right of jeopardy, does not infringe the rule stated in the Rudder case, as a general proposition. See also Powell v. State, 17 Texas Crim. App., 345. The doctrine laid down by the Parker case, and that line of authorities, including Pickett's case, is believed to be correct by the writer. If the constitutional provisions, article 1, section 14, and the statutory enactments as found in the Code of Criminal Procedure, articles 9, 20, 561, subdivision 2, and 762, and notes are of any effect, or to be regarded and given effect, then appellant's contention is correct. Article 561, subdivision 2, reads as follows: "That he has been before acquitted by a jury of the accusation against him, in a court of competent jurisdiction, whether the acquittal was regular or irregular." Article 20, supra, provides: "By the provisions of the Constitution an acquittal of the defendant exempts him from a second trial or a second prosecution for the same offense, however irregular the proceedings may have been; but if the defendant shall have been acquitted upon trial in a court having no jurisdiction of the offense, he may, nevertheless, be prosecuted again in a court having jurisdiction." Article 9, supra, provides: "No person for the same offense shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction." Article 762, of the Code of Criminal Procedure, thus provides: "If a defendant, prosecuted for an offense which includes within it lesser degrees, be convicted of an offense lower than that for which he is indicted, and a new trial be granted him, or the judgment be arrested for any cause other than the want of jurisdiction, the verdict upon the first trial shall be considered an acquittal of the higher offense; but he may upon a second trial be convicted of the same offense of which he was before convicted, or any other inferior thereto." Article 9 is a copy of section 14 of the Bill of Rights. Murder of either degree is not the "same offense" as manslaughter. Manslaughter is not the "same offense" as negligent homicide; negligent homicide is not the "same offense" as manslaughter; neither are the "same offense" as assault with intent to murder, and there is a broad distinction between aggravated assault and murder, manslaughter, negligent homicide, or an assault with intent to murder. If an accused party can be convicted of manslaughter on evidence which shows only murder in the first or second degree, then the Legislature used very inapt words to define their intent and purpose, and their power to use appropriate language in defining murder and manslaughter was rather limited. That they made them different offenses is evidenced by the fact

that they defined them differently, even giving them different names. Article 751 of the Code of Criminal Procedure provides: "Where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree (naming it), but guilty of any degree inferior to that charged in the indictment or information." Article 752, C. C. P., provides: "The following offenses include different degrees: 1. Murder, which includes all the lesser degrees of culpable homicide, and also an assault with intent to commit murder. 2. An assault with intent to commit any felony, which includes all assaults of an inferior degree."

An indictment charging murder, which means murder in the first and second degrees, under article 752, may also include manslaughter, negligent homicide, and assault with intent to murder, or any other culpable homicide designated in the statute. Now, if the party be acquitted of murder, and is again placed upon trial for manslaughter, and the evidence shows murder, and excludes manslaughter, and a conviction can be sustained for manslaughter upon that evidence, then upon the same theory and upon like evidence he could be convicted of negligent homicide in either or both degrees, homicide in either or both degrees, or an assault with intent to murder. This proposition would hardly be maintained as correct, especially with reference to negligent homicide, for under either one of those offenses the intention to kill must be wanting in order to constitute the act negligent homicide, yet culpable homicide is included by virtue of this statute as a degree of murder. Flynn v. State, 43 Texas Crim. Rep., 407. There is a marked distinction between the proposition that a party may not be convicted on a subsequent trial of an inferior grade of homicide upon testimony showing only the higher grade when he has been acquitted of the higher grades on the former trial, and the proposition that he may be convicted of the lesser grade when originally on trial on all grades before any acquittal occurs. In the first instance he has been acquitted on all higher degrees; in the second he has not been acquitted of any degree. The main reason for this distinction is found in the doctrine of jeopardy and former acquittal or conviction, as the case may be. There is no constitutional inhibition as to one, but there is positive prohibition as to the other, not only so in the Constitution, but expressly so by reason of the act of the Legislature cited, supra. So much for the general proposition. We might pursue comparisons and illustrations in theft, forgery and other crimes, the principle being the same.

In regard to the question as presented in the case, I do not believe the charge requested by appellant to acquit if the evidence showed murder in the first or second degree should have been given, unless there was wanting evidence to prove the State's case of manslaughter. Scroggins and Pickett cases, supra. But the writer

is fully persuaded that where the State has no evidence upon which to predicate a conviction for manslaughter, or negligent homicide, as the case may be, and must rely alone upon evidence of murder where an acquittal has been obtained for that offense, then the accused would have a right to an instruction of acquittal, otherwise it occurs to me that the constitutional guaranties and legislative enactments would be more than worthless and idle vagaries. Be it understood that this court did not ordain the Constitution, nor did it include or insert one single plank in it; nor create the acts of the Legislature, but this court's mission as a court is simply to enforce these provisions of law as we find them, and as long as the acts of the Legislature are in accordance with or rather not antagonistic to the Constitution, so far as the courts are concerned, they must stand until repealed by legislative authority.

For the reasons indicated in regard to the errors of commission and omission, referred to in this case, the judgment ought to be reversed and the cause remanded.